Case number 24-5335, USA v. Thomas Weir, et al. Arguments not to exceed 15 minutes per side. Ms. Jerkinson, you may proceed for the appellate. Good morning, Your Honors, and may it please the Court, Nonnie Jefferson on behalf of the United States, and I would reserve three minutes for rebuttal. This case centers around a very unusual business arrangement between a business owner with no pharmacy experience and a former pharmacist who had been stripped of his license for unlawfully distributing controlled substances. The nature and purpose of this arrangement, the intent behind this agreement to do business together, is at the heart of this case. The District Court excluded pre-trial key pieces of evidence essential to establishing the nature and purpose of this arrangement and defendants' intent when they decided to join forces and operate pharmacies that distributed controlled substances outside the usual course of professional practice and without a legitimate medical purpose. The evidence that was excluded falls into essentially two buckets. The first bucket is the exclusion of any mention of Defendant William Donaldson's prior conviction for unlawful distribution of controlled substances out of the very same pharmacy at issue in this case, which goes directly to Defendant Donaldson, Defendant Thomas Weir, and later Pamela Spivey's intent to join in a conspiracy to do more of the same, to unlawfully distribute controlled substances. The second bucket of evidence excluded relates to Donaldson's unlawful possession of a pharmacy patient's oxycodone pills in the middle of the charged conspiracy, which is direct evidence that Defendant Donaldson was receiving pills as payment for his patient recruitment services for the pharmacy and was thus aware that pharmacy patients were abusing and diverting drugs dispensed by the pharmacy. The District Court abused its discretion when it excluded all of this evidence pursuant to Rules 404B and 403. I'd like to start and go through the evidence chronologically and start with Donaldson's 2013 conviction. Now, this is a federal conviction for the unlawful distribution of controlled substances, in that case hydrocodone, to a pharmacy patient back when Donaldson was a licensed pharmacist and owner of Dale Hollow, one of the pharmacies later purchased by Thomas Weir. This is a conviction that everyone in this very small rural community knew about, including Thomas Weir and Pamela Spivey. Weir in particular was warned repeatedly not to bring Defendant Donaldson back to the pharmacy where Donaldson was caught unlawfully distributing hydrocodone. Yet Weir decides to bring Donaldson back immediately, essentially, after he is released from federal prison while he's still on federal supervised release, continues to employ him despite regulators, monitors, law enforcement personnel telling him that Donaldson should be nowhere near that pharmacy given this prior conduct. The current charge is a conspiracy and health fraud charges? Count 1 is a Title 21, Section 846 conspiracy to distribute controlled substances without authorization. This is a conspiracy charge. The conviction that you want in 2013 is not conspiracy. That's just a separate crime of selling controlled substance. How does that have anything to do with the current conspiracy? So I think when you look at both as specific intent crimes and you look at what the specific intent is, right? He had an intent in 2013 to sell illegal drugs, but does that mean he's guilty of a conspiracy? And I'm not sure what year this is, but this is probably 2020 or something like that. I mean, you know, seven, eight years later to join a conspiracy. It's much closer in time because the beginning of the conspiracy starts in April of 2014, which is right after he's released from prison for the federal charge. So it's much closer in time. It is closer in time. All right. And it happens. And I think that chronology is important here. But it's not part of the conspiracy. The fact that somebody has a prior conviction of another crime doesn't seem to have anything to do with whether he's a member of a current conspiracy. Well, I think I think it does, Your Honor. And I think this the this court and there are multiple cases that are cited in our briefs where the specific intent to distribute in a prior or say a possession with intent to distribute case. Right. Or a distribution case is probative of a conspiracy to distribute drugs unlawfully. So because the intent here and I think actually when you look at the district court at the tail end of the conference was actually talking about the jury instructions and talking about what elements the government would have to prove and indicated that it believed after Ruan that there should essentially be like a third element for the conspiracy charge. That would be that defendants knowingly and intentionally distributed these drugs without authorization. So that would have if that was, in fact, the jury instruction. The district court had decided to get to instruct the jury with if we had proceeded to trial that that that specific intent is is precisely the specific intent that would be at issue in the prior conviction here. The act is the same, even though here you have a conspiracy when you're looking. That means he did it before. He's likely to have done it. And this isn't. Isn't that the inference that's prohibited by 403? It is your honor. And if that's the sole purpose for the introduction of this prior acts evidence, then it would fall under 408. It's not an absence of mistake that because it's a different time period. I mean, it's it's hard hard for me to see the probative value of it. That's all. But this court has repeatedly held that, you know, prior drug distribution evidence can and is probative of later intent to distribute, which which is precisely what's at issue here. And I think there is, you know, if you look at the case law on this, you know, there's sort of a sufficiently analogous test. There's also sort of a more narrow test articulated by Bell. The purpose there is to say, you know, it really are these similar enough to just worried about the jury hears this and they're going to say, well, he did it before. So he's likely to have done it again. And that's that's what we're supposed to keep out, that you're actually supposed to prove the current case and not the fact that he's a bad actor. So he's been bad before. So I think he's probably bad again. I mean, that's that's kind of the inference you want to use here. Here is the question of when when Donaldson comes back to the pharmacy in 2014 after this conviction, gets invited back, not as a pharmacist, because at this point in time, his pharmacy license is revoked. But to essentially act as a patient recruiter and greeter. What is going on in his mind? Right. What is his intent? And very importantly here, it's not a case just against Donaldson. We also have to prove Weir's intent and Spivey's intent. Right. What is going on in Thomas Weir's mind when he invites Donaldson back to the pharmacy? I think if if Donaldson were not proceeding to trial in this case, and this was a case that was solely against Thomas Weir and Pamela Spivey, right, the two pharmacy owners here. I think there's absolutely no question that it'd be permissible and probative of their intent that they decide to invite back somebody who has this kind of criminal history that they all know. That people keep warning like this was he was a problem at this pharmacy. He was such a problem that he got convicted for unlawfully distributing controlled substances. Why are they bringing him back? I think that's the central question. The pharmacists in this case have already pled guilty. They've already admitted that the pharmacies were unlawfully distributing controlled substances. The question is, what did Donaldson know? What did Weir know? And what did Spivey know? And what was their intent when they decide to go into business together? So I think when you're right that there is baked into 404B a 403 analysis, which is after you've decided that this is probative of intent. And the Sixth Circuit has repeatedly said that this type of evidence can come in and is permissible to show intent. Then you weigh it against, you know, is this substantially more prejudicial than it is probative? There, when you look at the case as a whole, when you look at the evidence as a whole, you look at the probative value not just to Donaldson. Because maybe the probative value to Donaldson is slight. Maybe there's enough, you know, sort of distinguishing factors here that it's sufficiently analogous but maybe only slightly probative. But then we would go to weigh it against the potential prejudice. And we weigh the probative value. The probative value as to Weir and as to Spivey in terms of their knowledge and intent, I think there's no question that the probative value as to all three defendants is much greater than any prejudice to Donaldson here. I did want to address as well there is in the midst of the conspiracy a second conviction and facts relating to that conviction as a state court conviction were also excluded by the district court. Now this is in 2016. The time frame of the conspiracy is from 2014 to 2019. So this is in the middle of the conspiracy. There is an altercation at one of the pharmacies and the police are called. Donaldson has ransacked the pharmacy over a dispute with Weir over payment. And when law enforcement go to arrest him on that vandalism charge, they find that in his pocket, he has a Dale Hollow Pharmacy pill bottle with a pharmacy patient's oxycodone pills in his pocket. What was the date on that? It's from November of 2016 is when he gets arrested. And so they end up charging. There's charges that follow. There's a state court conviction in which he admits this unlawful possession. And what we had proffered at the district court is that this testimony really is part of the charged scheme here. And that is that testimony of pharmacy patients would show that Donaldson, part of what he was doing as part of his role in this conspiracy right now that he's no longer actually able to be a pharmacist, his role as a recruiter is to drive patients around, take them to doctor's appointments all across the state, get their prescriptions filled, pay their copays, bring them back to the pharmacy, get their prescriptions filled at the pharmacy, pressure the pharmacist to fill their prescriptions, even though there are red flags. And then in payment, he would sometimes receive cash, but he would also receive patient pills. So when Donaldson is arrested in 2016 and he's got a pharmacy patient pill bottle in his pocket that he later admits he was not authorized to have, that corroborates that anticipated patient testimony and shows that this is actually part of the charged conduct, part of the scheme, part of his role in this, what he was doing. But it also goes directly to his knowledge. It makes it more likely that he knew that patients were abusing and diverting their pills if he's got pills in his pocket in the middle of the charged conspiracy. It is also directly relevant to Weir and Spivey's intent, given sort of the collateral consequences of that, right, which is that his federal supervised release gets revoked. And as a result, they sort of hide him when he comes back. They start paying him off the books, and that is part and parcel of the charged anti-kickback scheme. And the district court judge found that all of the facts surrounding this possession were probative, but just not this one little piece. And I think here that one piece, the why of why Donaldson was essentially treated differently coming back, that was an abuse of discretion. And I see that I'm out of my time. Good morning. May it please the court. I'm Richard Tennant. I'm here on behalf of all of the appellees. I actually represent Mr. Donaldson along with Micah Bradley. Vickisha Hood is here on behalf of Ms. Spivey. The district court didn't abuse its discretion in this case. It didn't make any erroneous findings of facts. None have just been alleged. It didn't ignore the controlling legal standards, and it didn't misapply the law. Instead, the district court carefully exercised its discretion to address 35 motions in limine, 25 responses, 900 exhibits, and to, for the most part, rule for the government. And for the next most part, to rule that it was going to have to wait to trial to see how things developed. But only on these three areas do we really have a contest where we won. And I would suggest that if you or you were sitting in that courtroom, you would not have reached the same decisions as a district judge because you would have exercised your discretion differently. I don't know how. But your judges, and I dare say when you're addressing 35 different motions in limine, each of you would have reached slightly different conclusions because that's part of judging, is that exercise of discretion. But that doesn't make it wrong. Because if there were an absolute right answer to any one of these questions, then it wouldn't be discretionary. We'd be looking at a Miranda violation where we have on tape that they didn't read Miranda. That's non-discretionary. You've got to grant the suppression motion. But that's not what we have here. So recognizing that and recognizing the incredible deference this court usually gives to these incredibly nuanced balancing decisions, I think it's very hard to say that the district court made a clear error of judgment in any direction. Like I say, when I suggest that you might have reached different conclusions, I'm not saying that you would have ruled against us as much as the district court did. There's certainly rulings that we're not particularly happy about ourselves. But one of the things that the district judge did do here was engage with the unique charging position of this case. So this isn't a regular drug distribution case. No one is accused of illicitly giving someone drugs. They're not prescribed. So like Donaldson's 2010 arrest, for instance, and it actually is back in 2010 that he's arrested, is for giving drugs to a man in a parking lot. These are not drugs that this man has prescribed. I mean, he does have a prescription for drugs, but he's just being given drugs under the table in a parking lot. So here instead we have a really unique theory that they've alluded to, that we have two pharmacy owners and a former pharmacy owner, who was a beloved pharmacy owner, by the way. A kind of, if not a pillar of the community, someone the whole community knew. And the three of them are charged with inspiring, inducing, encouraging pharmacists who worked at the pharmacies to fill facially valid prescriptions that were medically unnecessary if you looked at them in the statistical aggregate. Okay, and that's something we lost. Those statistics are going to come in. The government's going to be able to show that, well, any one prescription might be valid, but in the aggregate there's sure a lot of subutex prescriptions here that you're filling, and that's a red flag. And we lost that. They're going to be able to present all of that statistical evidence. Similarly, another red flag that they're going to point to is that the people buying or receiving these prescriptions were addicts, and that people in the community knew they were addicts. Again, we lost. There's going to be lay testimony that some of these customers were addicts. In fact, there's going to be testimony that some of them overdosed. That's obviously, as I would say, prejudicial, okay? But the district court didn't find it unfairly prejudicial, at least not to such an extent that it outweighs its probative value, insofar as the defendants knew that people had overdosed. And so what I'm pointing out is these are careful, fact-based determinations the district court is making that are largely adverse to my side. And similarly, I think the other set of charges that matter here is there's some complicated kickback counts that involve Carlos the monkey and monkey bucks and such and so forth. But what really matters for us is there's this 2016 vandalism incident that's captured on police body camera where my client, very prejudicial to us, is seen kind of in the middle of a temper tantrum at Mr. Weir's pharmacy. He has just knocked over all of the shelves. There's medicine and sundries spread every which way. He's very upset. That's coming in, okay? And it's coming in because he says, I did it because Weir isn't paying me, okay? That goes to the kickbacks. And that comes in. This incredibly prejudicial video is going to come in. What's not going to come in is a small matter of what was in his pocket while he was doing the vandalism. In his pocket was this other patient, his roommate. His being upset was connected to the illegal drugs scheme that he was a part of. So, I mean, it is relevant and related to the course of dealing, of illegal dealing in drugs between all these people. You're right, and I apologize. I've clearly, that's my exact point. Because the district court said that's admissible. All of that vandalism is coming in. Some of this argument by saying that this is small potatoes to be the subject of the interlocutory appeal because the district court just called it as she saw it and a lot of stuff that is prejudicial to you is coming in. Is that the sum and substance of it? Yes, I felt it would be kind of arrogant if I called it small potatoes, but I was... I respect what you're doing as an advocate because you're trying to put it in the context of all the rulings that were made. That's exactly right.  And part of that is, and I think it's a challenge for you, is you are being asked to look at these issues as if they are in their own separate little silos, and they're not. The district court judge here exercised her discretion to look at the whole picture of what the government's case was going to be and to largely allow in the vast majority of the case. And so when she's weighing prejudicial impact, she's also, of course, considering, does the government have other ways of proving their allegations? Is there a better way to show, for instance, that, as they're just saying, that Mr. Donaldson is being paid by customers with pills? Well, maybe you could call a customer who's paying him with pills, for instance, I would suggest, as opposed to just saying he has pills in his pocket. And let me even say there, if that particular pill possessor were to come in and testify, I paid him those pills, well, then the judge might reconsider her decision. Because that's a point. She was very clear about the Spivey complaint, but I think this is a reality of all of these evidentiary rulings. She said as to the Spivey complaint, I'm keeping it out now, but as the trial goes on, I may change my mind. You're free to try to convince me otherwise. I mean, I'm not going to let in, she said, because Ms. Spivey had complained that Mr. Donaldson's pharmacy license was revoked. She said, I don't think I'm ever going to let that in. But the rest of Ms. Spivey's complaint, if you can show me at trial that this is admissible, I may let it in. And I think the same would have applied to anything, because that's the nature of jury trials. I've certainly won plenty of motions in limine pre-trial and then stepped in it and opened the door and taken away my own victory by presenting defense proof that the prosecution successfully argued reopened the door. Mr. Tennant, can we go back to the state court conviction, Donaldson's state court conviction? You were talking about pills in his pocket. I think that's what we're talking about. He was convicted. And why is that not evidence of the conspiracy? Why isn't part of the conspiracy that he's charged with? So I think the conspiracy is for him to encourage pharmacists to fill prescriptions. Then he gets a disagreement and he goes on this rampage and he's convicted of having one of the patient's pills. I mean, isn't that relevant to the whole conspiracy that they're in it together and everything? Why is that not relevant? So I think what is most relevant, of course, is the- You say if there's a better way to prove it, then the judge can keep it out. I don't think that's what 403 says. I think 403 is a balancing test, that you have to weigh the probative value against the prejudicial effect, not whether there's a better way to do it. Tell me why that state court conviction. That's the part that bothers me the most. I think that probably should have gone in.  Okay? You agree that it was error then? No, no, absolutely not. I agree that you would have ruled differently, and that's okay. Tell me why it should not go in. Why it was an appropriate exercise of the district court's discretion to find it shouldn't have come in is that it was too attenuated to the idea that these other pharmacists were filling prescriptions for other people that were medically unnecessary. There's nothing about these pills in his pocket that says these pills are medically unnecessary for the person who had these pills prescribed unto them. These pills don't show that he's encouraged a pharmacist to fill a prescription inappropriately. Doesn't it show that they are in a conspiracy together, that they are lumped together, because that's why he's got the pills in his pocket, that he's getting even with his partners? I mean, isn't that the theory? Well, I mean, that's why the vandalism is coming in. Yeah. That shows he's getting even with his partners. Well, the pills too, then. Well, I mean, so that gets really fact-based, and I don't know if it's fully in the record, but he's going to say these are my roommate's pills, and my roommate's in jail, and I've got his pills on me. Okay? So there's other explanations for why he has the pills, and I don't want to take you down an avenue that's... Well, if it's not in the record, I guess we can't... Yeah. But I think we're jumping to a conclusion, and I'm not saying, Judge Griffin, that your conclusion would be an abuse of discretion if you were the trial judge. If that's the conclusion you jump to, I'd object to it, but I wouldn't say you abused... Well, I probably would, because I'm a defense lawyer, so I would say you abused your discretion, but I would probably lose that, okay? Because in reaching that conclusion, you wouldn't have misapplied the law, I don't think. Okay? You know, and let me talk about... I've cited some cases, Bell, Claypool, Sliwa, Jenkins, where results come out favorable to people on my side. I don't cite those if those are black-letter rules, because they aren't. That's not the nature of discretion. When you, as a trial judge, exercise your discretion, you inevitably can make choices one way or another. I cited those cases for the proposition that the district court's judge was consistent with prior precedent, which I think is the complete opposite of issuing a ruling that you can be convinced is clearly erroneous, because it's a ruling that's consistent with what other panels of this court have approved of. So it's hard to say that something that other panels of this court have approved of, and in fact judges on this very panel have approved of, like in Bell, would be clearly erroneous here. It is, again, there's no absolute right answer most of the time. And I think it's really important to note how the judge did this. I think she did this in a really thoughtful way. She said at the very beginning of the hearing, I think it's page 8 of the transcript, page ID 2030, she said, I've got to address a lot of motions. I am going to give you my rulings on each and every one, but if you want to give more argument, please do. And that's exactly what she did here. As to each of these three bits of evidence, she gave a ruling, and then she gave the government an opportunity, which they took, to present their best arguments in opposition. And as I've set forth in more detail in the brief, there's conspicuous things they chose not to argue. And that's fair. Again, as advocates, we get to make our arguments. They mostly focused on how this evidence was raised jest-I, or intrinsic. I think they kept saying inextricably intertwined, inextricably intertwined. But what I've been focusing on here, and what was the ultimate gravamen of the district court's ruling, was that this evidence was unfairly prejudicial, and the unfair prejudice substantially outweighed probative value. Well, on that, the government declined to even utter the words prejudice, or explain why. Like, for instance, Judge Griffin, you've just observed why you might find it relevant. The other half of the equation is whether it's unfairly prejudicial, of course. And at argument, the government didn't engage with that. And so to say that the district judge then abused her discretion in ruling against them, after giving them full opportunity to present the best arguments they wanted, there was no restraints, we were all allowed to say whatever we wanted, she then issued these rulings. And I submit those can't possibly be an abuse of discretion. What do you want us to do on appeal? What rulings are you requesting from our court here? I think I'm requesting that you find that the judge ruled appropriately, and that she be vested with full discretion. On what issues? On the three issues here, that Mr. Donaldson's 2010 arrest, and then all subsequent consequences of that, be kept out. Both sides have put that chronologically as issue one. Issue two is the Spivey complaint, that she ruled correctly on keeping out the Spivey complaint, subject, of course, to her, she already reserved the right to reconsider that. And that you agree that she, and I shouldn't even say, I'm not asking you to say she ruled correctly, I'm asking you to say that she didn't abuse her discretion on any of these. And in regards to the 2016 vandalism incident, that she did not abuse her discretion in excluding evidence of what was in his pocket during the vandalism, his subsequent misdemeanor conviction for possession of a legend drug and a $50 fine, and the subsequent revocation of his federal supervised release on that earlier case. I'm just asking that you really restore us to the status quo. I mean, honestly, of course, I would like it that you issue a ruling that these things can never, ever come in forevermore, right? Because that would be nicer for me, but I don't think that would be fair. I do think the reality is a trial court has the ability to reconsider its rulings if, I mean, silly, but if my client were to take the witness stand and say, I'm a law-abiding citizen, I've never violated the law, I would never violate the law, and I don't ever possess drugs. Well, okay, then obviously his prior conviction, his license revocation, all of that would come in. But absent something on the ground changing, I think her preliminary rulings, because that's really what they are, should be upheld as they were not an abuse of discretion. All right, thank you. Thank you. We'll have rebuttal. The evidence excluded was not small potatoes. This case against these three defendants rises and falls on proving their intent. And there was some discussion by defendants' counsel about all the exhibit, the number of exhibits involved in this case and all the motions and limine that were filed, and these were the sole pieces of evidence excluded. But this intent evidence is the heart of this case. You know, there are many exhibits, you know, hundreds of exhibits of individual prescriptions and laws and rules and Medicare claims. I mean, we were asked to provide a complete exhibit list five months before trial here. We included anything we could possibly think of that might come up. But this was certainly not small potatoes. And in terms of taking this appeal, there were some very practical considerations in terms of trying this case, very concerned that we have lots of lay witnesses. We have essentially every lay witness in this case knew about Donaldson's conviction, very concerned that if this comes in inadvertently, even with coaching our witnesses, even with, you know, very carefully instructing them not to make any mention of this, that literally everybody knew that Donaldson was a convicted felon, and everybody was wondering why he was back at that pharmacy. If that slips out in a second, that could be a mistrial. So there were also sort of practical considerations, not just how important this evidence is, but how do we try this case when we're being asked to essentially excise it from our proof, excise it from our pharmacy patient testimony, that he was sitting in the pharmacy bragging about the fact that he had this prior conviction. Why is he doing that, right, if not to try to attract a certain type of clientele to that pharmacy that was not using the drugs being dispensed for legitimate medical purposes? It was an abuse of the district court's discretion here because the district court did not weigh, did not consider the probative value as to Weir and Spivey's intent with this evidence, right, and the importance of that. No consideration whatsoever solely focused on whether or not it was probative of Donaldson, and then simply concluded without any kind of analysis, like even if it did have any probative value, if it had any connection to the allegations in this case, you know, it's outweighed by unfair prejudice. And essentially the only argument by defense counsel was, well, once a drug dealer, always a drug dealer. If that were the case, then it would never be permissible to bring in prior drug distribution evidence to prove later intent to distribute. And that's certainly inconsistent with this court's precedent, that if you have criminal conduct that is connected to, that is related to the later criminal conduct, that can be probative of what Donaldson is thinking when he comes back to the pharmacy. But here, more importantly, what Weir and Spivey are thinking when they are joining forces with somebody who is a known convicted felon, a former pharmacist without a license, the district court recognized that other pharmacy employees could, their licensure issues could come in on a separate motion to them. And they said, well, that's absolutely probative of the defendant's, you know, knowledge of intent here. But when it came to Donaldson's pharmacy issues, treated completely differently without any 403 analysis. And for that reason, we would ask that the district court reverse these rulings and allow for the introduction of this evidence at trial. Thank you. All right. Thank you very much. And the case is submitted.